1  DANIEL E. MARTYN, JR. (State Bar No. 138122)
   JOHN E. MORAN (State Bar No. 94179
2  DIANA S. PONCE-GOMEZ (State Bar No. 187136)
   DANNER & MARTYN, LLP
3  100 E. Thousand Oaks Blvd., Suite 244
   Thousand Oaks, California 91360
4  Telephone:  (805) 777-8700
   Facsimile:  (805) 778-0736
5

6  Attorneys for Plaintiff
   DIRECTV, INC.
7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN JOSE DIVISION**

11  DIRECTV, INC., a California corporation,      CASE NO.:

12          Plaintiff,

13  v.                                            **COMPLAINT FOR COMPENSATORY,
                                                   STATUTORY AND OTHER DAMAGES, AND
14  RICHARD BRESLIN; SEAN DINH;                    FOR INJUNCTIVE RELIEF**
    RICHARD A. JOHNSON; KELSON TRAN,
15
            Defendants.
16

17        Plaintiff DIRECTV, Inc. ("DIRECTV") hereby complains as follows with respect to its claims

18  arising under federal question jurisdiction 28 U.S.C. §§ 1331 and 1338(a).

19                  **NATURE OF THIS CASE**

20        1.    DIRECTV is the nation's leading direct broadcast satellite system, delivering over 225

21  channels of television and other programming to more than 10 million homes and businesses in the

22  United States.   DIRECTV's television programming currently includes major cable networks, studio

23  movies and special events programming, as well as a variety of sports and other special interest

24  programming.   DIRECTV, a California company, has invested more than $1.25 billion to develop its

25  direct broadcast satellite system.

26        2.    DIRECTV encrypts – electronically scrambles – its satellite transmissions to provide

27  security for and prevent unauthorized viewing of its satellite television programming.   DIRECTV

28  offers its television programming to residential and business customers on a subscription and pay-per-

1    view basis only.   Each customer is required to obtain a DIRECTV Access Card and other system

2    hardware (including a small satellite dish) and create an account with DIRECTV.   Upon activation of

3    the Access Card by DIRECTV, the customer can receive and view in a decrypted format (*i.e.*,

4    unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to

5    purchase from DIRECTV.

6         3.   On May 25, 2001, DIRECTV executed Writs of Seizure, with the assistance of local

7    law enforcement, at the mail shipping facility used by several major sources of pirate technologies

8    including, but not limited to, White Viper Technologies ("White Viper").   During and subsequent to

9    the raids, DIRECTV came into possession of a substantial body of sales records, shipping records,

10   email communications, credit card receipts and other records, including but not limited to, additional

11   records obtained from White Viper on September 14, 2001.   Those records evidence each defendant's

12   purchase of illegal "Pirate Access Devices" (as defined herein).   In reliance upon those records and

13   other information, and upon information and belief, DIRECTV sets forth the allegations in this

14   Complaint.

15        4.   On or about November 2002, DIRECTV obtained records from The Royal Canadian

16   Mounted Police ("RCMP") which were obtained by the RCMP from an individual named Reginald

17   Scullion.   Mr. Scullion's business records relate to his operation of companies named "Avantec" and

18   "Vcipher Technologies" (hereinafter "Avantec").   Importantly, the business records turned over to

19   DIRECTV evidence ongoing illegitimate enterprise which focused on distributing electronic devices

20   primarily designed for the surreptitious interception of satellite communications broadcast by

21   DIRECTV.   The records included orders, invoices, electronic communications, shipping

22   documentation, product descriptions and customer lists related to the distribution of Pirate Access

23   Devices.

24        5.   Avantec specialized in the alteration and sale of pirated DIRECTV access cards and

25   other equipment used to illegally receive DIRECTV's satellite signals, thus enabling users to watch

26   pay-per-view television channels without having to pay the broadcasters.   Mr. Scullion was physically

27   located in Chemin De La Mairie (Mountain Ranches Road) Regaud, Canada, but due to the expansive

28   reach of internet sales, Scullion was able to conduct business nationwide and across many countries.

2.

1    Avantec customers ordinarily placed orders through a website operated by Avantec known as

2    vcipher.com.   Avantec clients are residents of Canada and the United States, as well as citizens of

3    Central and South America.   Scullion himself has been involved actively in the theft of

4    telecommunication services since 1988.   He has been known for a number of years to Canadian and

5    U.S. authorities for his illegal activities.   The business records obtained evidence the purchases made

6    by Defendant SEAN DINH.   Importantly, as the defendant is a United States residents, defendant's

7    acts of ordering and sending Pirate Access Devices to and from a Canadian source constitutes

8    importation and exportation of Pirate Access Devices, and such conduct violates federal statutory

9    communications law (47 U.S.C. § 605(e)(4)).

10       6.       Each record obtained confirmed the existence of a distribution source for the country-

11   wide transmission of devices primarily designed for the unauthorized interception of DIRECTV's

12   Satellite Programming.   More pertinently, the business records obtained pursuant to these events

13   evidence defendant's purchases of Pirate Access Devices.   The devices or items were then shipped to

14   customers via United States mail or commercial carrier.   The devices in question were primarily in the

15   assistance in the unauthorized decryption of DIRECTV Satellite Programming.   In reliance on those

16   records and other information, and upon information and belief, DIRECTV brings this lawsuit against

17   the Defendant for Defendant's purchase, possession, importation, and/or use of Pirate Access Devices.

18       7.       Each defendant is a resident of this District.   DIRECTV alleges that each defendant has

19   purchased and used illegally modified DIRECTV Access Cards and Pirate Access Devices that are

20   designed to permit viewing of DIRECTV's television programming without authorization by or

21   payment to DIRECTV.

22       8.       Each defendant's activities violate federal telecommunication and wiretapping laws and

23   common law.   Specifically, each defendant's actions violate the Federal Communications Act of 1934,

24   as amended, 47 U.S.C. § 605 and the Electronic Communications Privacy Act ("Federal Wiretap

25   Laws"), 18 U.S.C. §§ 2510-2521.   As a result of each defendant's decision to obtain Pirate Access

26   Devices and the detrimental impact that such activities have on the company, DIRECTV brings this

27   action seeking damages and injunctive relief against each defendant's continued possession and/or use

28   of Pirate Access Devices.

3.

1

**JURISDICTION AND VENUE**

2      9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a),

3   47 U.S.C. § 605(e)(3)(A) and 18 U.S.C. § 2520(a) because the claims in this action arise under the

4   Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 and the Electronic

5   Communications Privacy Act ("Federal Wiretap Laws"), 18 U.S.C. §§ 2510-2521.

6      10.      This Court may exercise supplemental jurisdiction pursuant 28 U.S.C. § 1367(a) over

7   the state law claims asserted herein.

8      11.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because each defendant is a

9   resident of this district and is subject to personal jurisdiction in this district.

10

**INTRADISTRICT ASSIGNMENT**

11      12.      Assignment of this action to the San Jose Division of the United States District Court

12   for the Northern District of California is proper pursuant to Civil Local Rule 3-2(c) and Civil Local

13   Rule 3-2(e) because the events which give rise to the claims in this action occurred in the county of

14   Santa Clara.

15

**PARTIES**

16      13.      Plaintiff DIRECTV, Inc. is a corporation duly incorporated under the laws of the State

17   of California.   DIRECTV has significant interests in maintaining and securing the integrity of its

18   satellite transmissions of television programming, and in prohibiting the unauthorized reception and

19   use of the same.

20      14.      Defendant RICHARD BRESLIN is a resident of San Jose, California.   Upon

21   information and belief, beginning in or about July, 2000, Defendant RICHARD BRESLIN purchased

22   one or more Pirate Access Devices from White Viper.   Defendant placed each order by using interstate

23   or foreign wire facilities, and received his orders via the United States Postal Service or commercial

24   mail carriers.   Specifically, these illegal purchases included the following transaction:

25          (a)      On or about July 20, 2000, Defendant RICHARD BRESLIN purchased two (2)

26   Pirate Access Devices, consisting of a printed circuit board device called a "Wildthing 2 Clone

27   Unlooper" and programmer primarily designed to illegally modify DIRECTV Access Cards called a

28   ///

4.

Complaint For Compensatory, Statutory And Other Damages, And For Injunctive Relief

1    "Viper Reader/Writer," from White Viper.   The devices were shipped to Defendant RICHARD

2    BRESLIN at his address in San Jose, California.

3           15.    Defendant SEAN DINH is a resident of San Jose, California.   Upon information and

4    belief, beginning in or about April, 1998, Defendant SEAN DINH purchased one or more Pirate

5    Access Devices from White Viper and Avantec.   Defendant placed each order by using interstate or

6    foreign wire facilities, and received his orders via the United States Postal Service or commercial mail

7    carriers.  Specifically, these illegal purchases included the following transactions:

8           (a)    On or about April 14, 1998, Defendant SEAN DINH purchased three (3) Pirate

9    Access Devices, consisting of a printed circuit board device, a programmer primarily designed to

10   illegally modify DTV access cards and an illegally modified DIRECTV Access Card called a "Lil

11   Black Box with Blocker and 3M," from Avantec.   The devices were shipped to SEAN DINH at his

12   address in San Jose, California.

13          (b)    On or about August 18, 1998, Defendant SEAN DINH purchased two (2) Pirate

14   Access Devices, consisting of an illegally modified DIRECTV Access Card and a printed circuit board

15   device called "An Advanced User CL-6000 and Brick Wall," from Avantec.   The devices were

16   shipped to SEAN DINH at his address in San Jose, California.

17          (c)    On or about July 25, 2000, Defendant SEAN DINH purchased a Pirate Access

18   Device, consisting of a printed circuit board device called an "unlooper," from White Viper.   The

19   device was shipped to Defendant SEAN DINH at his work address in San Jose, California.

20          16.    Defendant RICHARD A. JOHNSON is a resident of San Jose, California.   Upon

21   information and belief, beginning in or about August, 2000, Defendant RICHARD A. JOHNSON

22   purchased one or more Pirate Access Devices from White Viper.   Defendant placed each order by

23   using interstate or foreign wire facilities, and received his orders via the United States Postal Service

24   or commercial mail carriers.  Specifically, these illegal purchases included the following transaction:

25          (a)    On or about August 1, 2000, Defendant RICHARD A. JOHNSON purchased

26   two (2) Pirate Access Devices, consisting of a programmer primarily designed to illegally modify

27   DIRECTV Access Cards called a "Viper Reader/Writer" and a printed circuit board device called a

28   "Whiteviper Unlooper," from White Viper.   The devices were shipped to Defendant RICHARD A.

5.

1    JOHNSON at his former address in San Jose, California.

2        17.    Defendant KELSON TRAN is a resident of San Jose, California.   Upon information

3    and belief, beginning in or about July, 2000, Defendant KELSON TRAN purchased one or more

4    Pirate Access Devices from White Viper.   Defendant placed each order by using interstate or foreign

5    wire facilities, and received Defendant's orders via the United States Postal Service or commercial

6    mail carriers.   Specifically, these illegal purchases included the following transaction:

7            (a)    On or about July 18, 2000, Defendant KELSON TRAN purchased a Pirate

8    Access Device, consisting of a printed circuit board device called a "Wildthing 2 Clone Unlooper,"

9    from White Viper.   The device was shipped to Defendant KELSON TRAN at Defendant's address in

10   San Jose, California.

11                            **FIRST CAUSE OF ACTION**

12              **UNAUTHORIZED RECEPTION OF SATELLITE SIGNALS**

13                     **IN VIOLATION OF 47 U.S.C. § 605(a)**

14                         **(AGAINST ALL DEFENDANTS)**

15       18.    Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 17 as

16   if set forth fully herein.

17       19.    Each defendant has received and assisted others in receiving DIRECTV's satellite

18   transmissions of television programming without authorization, in violation of 47 U.S.C. § 605(a).

19       20.    Each defendant's violations have injured and will continue to injure DIRECTV by

20   depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration,

21   compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and

22   proprietary information, and interfering with DIRECTV's contractual and prospective business

23   relations.

24       21.    Each defendant knew or should have known that receiving and assisting third persons

25   in receiving DIRECTV's satellite transmissions of television programming without authorization by or

26   payment to DIRECTV was and is illegal and prohibited.   Such violations have caused and will

27   continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to

28   redress any such continued violations.   Unless restrained by this Court, each defendant will continue to

Complaint For Compensatory, Statutory And Other Damages, And For Injunctive Relief

1 violate 47 U.S.C. § 605(a).

## SECOND CAUSE OF ACTION

## UNAUTHORIZED INTERCEPTION OF ELECTRONIC

## COMMUNICATIONS IN VIOLATION OF 18 U.S.C. § 2511(1)(a)

## (AGAINST ALL DEFENDANTS)

22.    Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 21 as if set forth fully herein.

23.    By using Pirate Access Devices to decrypt and view DIRECTV's satellite transmissions of television programming, each defendant intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, DIRECTV's satellite transmission of television programming, in violation of 18 U.S.C. § 2511(1)(a).

24.    Each defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

25.    Each defendant knew or should have known that such interception of DIRECTV's satellite transmissions of television programming was and is illegal and prohibited.  Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.  Unless restrained by this Court, each defendant will continue to violate 18 U.S.C. § 2511(1)(a).

## THIRD CAUSE OF ACTION

## POSSESSION OF PIRATE ACCESS DEVICES

## IN VIOLATION OF 18 U.S.C. § 2512(1)(b)

## (AGAINST ALL DEFENDANTS)

26.    Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 25 as if set forth fully herein.

27.    Each defendant has used Pirate Access Devices to decrypt and view DIRECTV's

7.

1   satellite transmissions of television programming, with intent to avoid payment of the lawful charges

2   therefor, by trick, artifice, deception, use of a device or decoder, and other fraudulent means, without

3   authority from DIRECTV, in violation of 18 U.S.C. § 2512(1)(b).

4         28.   Each defendant has possessed and used Pirate Access Devices, with intent to avoid

5   payment to DIRECTV of the lawful charges for its programming, that are designed in whole or in part

6   to receive subscription television services offered for sale by DIRECTV, without authority of

7   DIRECTV, in violation of 18 U.S.C. § 2512(1)(b).

8         29.   Each defendant's violations have injured and will continue to injure DIRECTV by

9   depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration,

10  compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and

11  proprietary information, and interfering with DIRECTV's contractual and prospective business

12  relations.

13        30.   Each defendant knew or should have known that possessing Pirate Access Devices was

14  and is illegal and prohibited.   Such violations have caused and will continue to cause DIRECTV

15  irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued

16  violations.   Unless restrained by this Court, each defendant will continue to violate 18 U.S.C. §

17  2512(1)(b).

### FOURTH CAUSE OF ACTION

### CONVERSION

### (AGAINST ALL DEFENDANTS)

21        31.   Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 30 as

22  if set forth fully herein.

23        32.   By importing, possessing and using Pirate Access Devices, each defendant has

24  unlawfully converted to their own use and benefit property belonging to DIRECTV.

25        33.   Such conversion was done intentionally and wrongfully by each defendant to deprive

26  DIRECTV of its proprietary interests and for each defendant's direct benefit and advantage.

27        34.   As a direct and proximate result of each defendant's unlawful acts, DIRECTV has

28  suffered and continues to suffer damages, including lost subscription and pay-per-view revenues and

1 | other valuable consideration.

## FIFTH CAUSE OF ACTION

## IMPORTATION OF SATELLITE SIGNAL THEFT DEVICES

## IN VIOLATION OF 47 U.S.C. § 605(e)(4)

## (AGAINST DEFENDANT SEAN DINH)

35.     Plaintiff DIRECTV repeats and realleges the allegations in Paragraphs 1 through 34 as if set forth fully herein.

36.     Defendant has imported satellite theft signal theft devices without authorization, knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption DIRECTV's satellite transmissions of television programming, or are intended by Defendant to assist other persons in the unauthorized reception and use of DIRECTV's satellite transmissions of television programming, in violation of 47 U.S.C. § 605(e).

37.     Defendant's violations have injured and will continue to injure DIRECTV by depriving DIRECTV of subscription and pay-per-view revenues and other valuable consideration, compromising DIRECTV's security and accounting systems, infringing DIRECTV's trade secrets and proprietary information, and interfering with DIRECTV's contractual and prospective business relations.

38.     Such violations have caused and will continue to cause DIRECTV irreparable harm, and DIRECTV has no adequate remedy at law to redress any such continued violations.   Unless restrained by this Court, each defendant will continue to violate 47 U.S.C. § 605(e)(4).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DIRECTV requests that this Court grant the following relief:

(1)     Find the defendants' conduct in importing, possessing and using Pirate Access Devices violates 47 U.S.C. § 605(a) and (e)(4), 18 U.S.C. §§ 2511(1)(a) and 2512(1)(b), and California common law, and further find that defendants' violations were willful, malicious or for a tortious or illegal purpose;

(2)     In accordance with 47 U.S.C. § 605(e)(3)(B)(i) and 18 U.S.C. § 2520(b)(1), enjoin and restrain each defendant, and persons controlled directly and indirectly by each defendant, from importing, possessing, or using Pirate Access Devices, and further order each defendant to surrender

9.

1  all Pirate Access Devices;

2       (3)    In the event of a default, an award of statutory damages of $10,000 for each Pirate

3  Access Device possessed and used in violation of 18 U.S.C. 2520 (c)(2) and for each Pirate Access

4  Device imported into the United States in violation of 47 U.S.C. § 605(e)(4), and a further award of

5  DIRECTV's reasonable attorneys' fees and costs of suit;

6       (4)    In the event of trial, an award of either (a) statutory damages in accordance with

7  47 U.S.C. § 605(e)(3)(C)(i)(II) and 18 U.S.C. § 2520(c)(2), or (b) compensatory and punitive damages

8  in accordance with 47 U.S.C. § 605(e)(3)(C)(i)(I), 18 U.S.C. § 2520(c)(2), and California common

9  law; and DIRECTV's reasonable attorneys' fees and costs in accordance with 47 U.S.C.

10  § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3);

11       (5)    For such additional relief as the Court deems just and equitable.

12

13  Dated: September _____, 2003          DANNER & MARTYN, LLP

14

15

16            By:_____
               Diana S. Ponce-Gomez

17                 Attorneys for Plaintiff DIRECTV, INC.

18

19

20

21

22

23

24

25

26

27

28

10.

Complaint For Compensatory, Statutory And Other Damages, And For Injunctive Relief